IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR. No.: 3:05-1217 |
| ) | |
| vs. ) | **OPINION & ORDER** |
| ) | |
| CORNELIUS McDONALD ) | |

This matter is before the court on a request by the Bureau of Prisons ("BOP") to involuntarily medicate Cornelius McDonald with psychotropic medications in order to render him competent to assist in his defense. The defendant is alledged to have a severe mental disorder rendering him incompetent and incapable of deciding the best treatment for his disorder. For the reasons set forth below, the court grants the BOP's request.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On November 16, 2005, McDonald was charged with two counts of being a felon in possession of a firearm. In an order dated February 6, 2006, the court ordered that McDonald be sent for a psychiatric evaluation to determine:

1. Whether or not, at the time of the criminal conduct alleged... , the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality of the wrongfulness of his acts; and

2. Whether or not the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him

1

or to assist properly in his defense.

On March 24, 2006, the court granted an extension of the above mentioned order. On April 25, 2006, the BOP issued a report finding the defendant suffered from a severe mental disease (Psychotic Disorder N.O.S. and Adult Antisocial Behavior) rendering him incompetent to assist his attorney in the defense of his case. The examiner for the BOP, Dr. Manuel Gutierrez, was not able to render an opinion whether or not the defendant was unable to appreciate the nature and quality of the wrongfulness of his acts.as a result of a severe mental disease or defect due to limited information. Dr. Gutierrez did opine that should more information become available in the future, it is possible that a more definitive opinion can be offered regarding the defendant's criminal responsibility.

On June 9, 2006, the court held a competency hearing and granted a motion by the defendant's attorney, Assistant Public Defender, Langdon D. Long, which was joined in by the government's attorney, Assistant United States Attorney, Robert C. Jendron, Jr., that the defendant be further evaluated to determine if there was a substantial likelihood the defendant's competency could be restored. The court granted the motion on June 22, 2006 and the defendant was sent to the Federal Medical Center at Butner, North Carolina, for a competency restoration study. The evaluation period was extended on September 12, 2006.

On January 10, 2007, the BOP issued a report finding that the defendant remained incompetent to proceed to trial and requesting that the defendant be treated with psychotropic medications for a four month period of restoration as outlined in Title 18,

2

U.S.C. §4241(d).  The three evaluators, Robert J. Koranda, Dr. Carlton Pyant and Dr. Robert Lucking also diagnosed the defendant with Psychotic Disorder N.O.S. and Antisocial Personality Traits and recommended treatment with the first generation antipsychotic drug haloperidol.  However, the defendant while refusing to be treated is incapable of consenting to such treatment.  Hence, the reviewers recommend that the court order that the defendant be involuntarily medicated with psychotropic medications.

On February 14, 2007, a competency hearing was held and the four evaluators mentioned above testified at the hearing for the government.  They again recommended treatment of the defendant with psychotropic medication.  The defendant did not present any witnesses.

## II. DISCUSSION OF THE LAW

### A. Competency

The test for determining competency is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960). This determination is "left to the sound discretion of the district court, with the advice of psychiatrists." United States v. Rodman, No. 06-170, 2006 WL 2390348, at *3 (D.S.C. Aug. 14, 2006) and United States v. Knox, Cr. No. 6:06-269-HMH, 2006 WL 3247340 (D.S.C. Nov. 7, 2006).

Based on the evaluators' testimony at the hearing and a review of their reports, the court finds that the defendant is incompetent to proceed to trial due to a severe mental illness,

3

Psychotic Disorder N.O.S., which impairs his ability to assist his counsel with his defense..

### B. Request to Involuntarily Medicate the Defendant

Having found that the defendant is not competent to proceed to trial, the court must consider the BOP's request to involuntarily medicate the defendant. In Sell v. United States, 539 U.S. 166 (2003), the United States Supreme Court "clarified the legal standard for administering involuntary medication to render a defendant competent to stand trial." United States v. Evans, 404 F.3d 227, 233 (4th Cir. 2005). "In Sell the Supreme Court held that the government's interest in bringing a mentally incompetent defendant to trial can outweigh the defendant's liberty interest in being free from unwanted medication, such that the Due Process Clause will allow the government to medicate the defendant against his will." Id. at 235.

In order to involuntarily medicate the defendant, the Government must make a four-part showing. The Government must show by clear and convincing evidence that

1. "important governmental interests are at stake";
2. "involuntary medication will significantly further those concomitant state interests";
3. "involuntary medication is necessary to further those interests"; and
4. "administration of the drugs is medically appropriate."

Sell, 539 U.S. 166, 180-81 (2003).

### 1. Important Governmental Interests

"An important governmental interest exists when the defendant is accused of a 'serious' crime and special circumstances do not undermine the government's interest in trying him for that crime." Evans, 404 F.3d at 235. Determining whether a crime is serious requires focusing "on the maximum statutory penalty authorized by statute." Id. at 237. The statutory maximum for a violation of 18 U.S.C. § 922(g)(1) depends on the defendant's prior convictions. For a plain violation of § 922(g)(1), the statutory maximum is ten years. However, in this case, the defendant has four previous convictions for a violent felony or a serious drug offense, of which only three are required to invoke a mandatory minimum penalty of fifteen years imprisonment and a maximum term of life imprisonment; § 924(e).. The court finds the defendant is accused of a "serious crime" and the government has an interest in trying him for that crime.

The next issue is whether any special circumstances undermine the Government's interest in trying the defendant. For example, "the defendant's failure to take drugs voluntarily may mean lengthy confinement in an institution for the mentally ill, a fact that would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime." Sell, 539 U S. at 180. The same is true of the possibility that the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed). The defendant has been confined for approximately fourteen months and given the potential length of any sentence the defendant would receive as a result of a mandatory minimum fifteen years, the government's important interest in trying the defendant is not undermined by this

comparatively brief period of confinement. Further, it is unclear whether the defendant would be a good candidate for civil commitment under 18 U.S.C. § 4246, which allows commitment after completion of sentence or dismissal of charges if a person "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available." The defendant has been housed in the general population at Butner, so it does not appear that his release would create a substantial risk of harm to a person or property. Therefore, the court finds that the first prong is satisfied.

**2. Involuntary medication will significantly further concomitant state interests**

In order to find that involuntary medication will significantly further concomitant state interests, the court must find that (1) "administration of the drugs is substantially likely to render the defendant competent to stand trial"; and (2) "administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." Sell 539 U.S. at 181. In the latest report, the evaluators indicate that there is an 80% chance that administration of antipsychotic medications will render the defendant competent to proceed to trial. (Jan.10, 2007 Report, p. 16.) At one point during his testimony, Dr. Lucking indicated it was signficantly likely that the defendant would be restore to competency if he were administered a first generation anti psychotic drug. With respect to the side effects, the Report contains a detailed, individual treatment

plan that outlines the potential side effects of the various drugs that may be used and concludes that "the proposed treatment would be substantially unlikely to have side effects that will interfere significantly with the defendants ability to assist counsel in conducting a defense." (Report, p. 16.) Further, Dr. Lucking testified that any side effects can be managed medically. Therefore, the court finds that the second prong of the test is met as well, provided the defendant is treated with a first generation antipsychotic medication.

### 3. Involuntary medication is necessary to further those interests

In satisfying the third part of the test, "the court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results" Sell, 539 U.S. at 181. According to the Report, the defendant's condition is unlikely to improve without treatment with antipsychotic medication because he will not acknowledge he has a severe mental disorder and therefore is unlikely to engage in any form of psychotherapy ( Report, p. 8.) Furthermore, the Report as well as Dr. Lucking's testimony indicates that there is no evidence that psychotherapeutic techniques alone are alternatives for treatment with antipsychotic drugs. At the hearing on February 14, 2007, Dr. Lucking reiterated his opinion that the defendant's condition would not improve without treatment. Further, although the defendant has not been diagnosed as schizophrenic, the primary treatment of either a psychotic disorder or schizophrenia involves use of antipsychotics. Therefore, the court finds that this prong is satisfied.

### 4. The administration of the drugs is medically appropriate

In determining whether the administration of drugs is medically appropriate, "the specific kinds of drugs at issue may matter here as elsewhere. Different kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success." Sell, 539 U.S. at 181. As noted above, the use of antipsychotics to treat a psychotic disorder is standard treatment and in the defendant's best interests. Further, the Report details an extensive treatment plan regarding the kinds of drugs that will be used and the potential side effects. ( Report, p. 19). Moreover, Dr. Lucking testified that the side effects were minimal and could be managed medically. In addition, the risk of side effects is relatively low. Based on the foregoing, the court finds that the government has satisfied the fourth prong provided the evaluators use a first generation antipsychotic medication..

It is therefore;

**ORDERED** that the BOP's request to involuntarily medicate the defendant, Cornelius McDonald, is granted provided the defendant is treated with a first generation antipsychotic medication. It is further

**ORDERED** that the defendant's treatment continue through the entire pretrial process including during transportation, holdover, trial, and sentencing, if necessary.

**IT IS SO ORDERED**.

_____
MATTHEW J. PERRY, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Columbia, South Carolina

February 27, 2007